## THE PEOPLE *v.* PATRICK HUGHES.

PROOF ON TRIAL FOR ARSON COMMITTED TO DEFRAUD INSURANCE COMPANY.— In an indictment for arson for burning a building insured against loss by fire by a duly incorporated company, with intent to defraud the company, it is sufficient for the people to prove a corporation *de facto,* and that the agent by whom the insurance was made was an agent *de facto* of the corporation. The compliance of a foreign corporation with the laws of this State need not be proved.

PROOF AS TO *de facto* EXISTENCE OF CORPORATION.—In an indictment for arson committed with intent to defraud an insurance company, the testimony of the agent that he was acting as the agent of the corporation, and effected the insurance and delivered the policy, which was received by the defendant, is sufficient to warrant the jury in finding the *de facto* existence of the corporation, and the existence and delivery of the policy by its *de facto* agent.

PROOF OF VALIDITY OF A POLICY OF INSURANCE IN CRIMINAL CASE.—In a trial for arson committed with intent to defraud an insurance company, it is not necessary for the people to prove that the policy was valid, and that the defendant could maintain an action thereon for loss.

ARREST OF JUDGMENT IN CRIMINAL CASE.—In an indictment for arson committed with intent to defraud an insurance company, a variance between the name of the company as charged in the indictment and as proved on the trial, is no ground for the arrest of the judgment.

AFFIDAVITS OF JURORS TO IMPEACH THEIR VERDICT.—The affidavits of jurors cannot be received to impeach their verdict, except when the verdict is arrived at by a resort to the determination of chance.

NEW TRIAL IN CRIMINAL CASE.—A new trial will not be granted in a criminal case because a Sheriff takes charge of the jury where a Deputy Sheriff was sworn, nor because the Judge informs the jury, through the Sheriff, that if they do not agree in five minutes they must remain in the jury room over night.

JUDGMENT OF IMPRISONMENT.—A judgment in a criminal case that the defendant be imprisoned four years from the time of his delivery to the Warden of the penitentiary, is not erroneous.

APPEAL from the County Court, San Joaquin County.

On the motion for a new trial, the affidavits of several of the jurors were offered to show that there were two of the jurors who would not have consented to find the defendant guilty if they had not been informed by the Sheriff that the Judge had sent word to them that if they did not agree in five minutes they would have to remain in the jury room all night. When the jury retired to deliberate on their verdict, a Deputy Sheriff was sworn to take charge of them. The Sheriff himself, and not the Deputy, took charge of the jury. The Sheriff, after the jury had been out several hours, informed them that if they did not agree in five minutes they would have to stay out over night. The foreman told him to ask the Judge to wait fifteen minutes. Before the fifteen minutes expired the jury agreed. The defendant was convicted and sentenced to four years imprisonment, dating from the time of his incarceration. Defendant appealed.

The other facts are stated in the opinion of the Court.

*Tyler & Cobb,* for Appellant, on the question that a valid contract of insurance ought to have been shown, cited *King* v. *Gallison,* 1 Taunt. 95 ; 3 Lord Raymond, 1,532 ; 1 Bos. & Pul. 40 ; *United States* v. *Johns,* 1 Wash. C. C. 363.

*J. G. McCullough, Attorney-General,* for the People, argued that if the policy issued to the defendant was considered by him valid, it was sufficient in a criminal prosecution, though in a civil case a recovery could not be had thereon, and cited *United States* v. *Amedy,* 11 Wheat. 392, and on the question

of the *de facto* organization of the company, cited *People* v. *Stearns*, 21 Wend. 409; *Murray's Case*, 5 Leigh, 720; *Reed* v. *The State*, 15 Ohio, 224.

By the Court, SANDERSON, C. J.

The questions arising under the first, second and third bills of exceptions, and the exceptions to the refusal and giving of instructions to the jury, so far as they are discussed by counsel, are substantially the same, and we shall consider them together.

I. The defendant was indicted for arson in the second degree, under Article 1,917, Wood's Digest, p. 336, committed by burning a certain building belonging to him, which building was at the time insured against loss or damage by fire by a duly incorporated company, known by the name of the Hartford Insurance Company, with intent to defraud said company. At the trial it was shown by the prosecution that the building was insured in the Hartford *Fire* Insurance Company, upon the request of the defendant, by one Charles Belding, acting as agent of the company at Stockton, in this State, and that said Belding delivered the policy to the defendant, and that the same was accepted by him. But no proof was offered of the due incorporation of the insurance company or of their compliance with the statutes of this State in order to entitle them to transact business here.

The record does not contain the evidence so far as the present branch of it is concerned, but merely bills of exception and the instructions of the Court. As we understand the record, the only question presented by this branch of it is as to whether it was necessary for the prosecution to prove the existence of the insurance company as a corporation by the production of its charter, and showing a compliance on its part with the law of this State, and that the contract of insurance was made by the duly and legally appointed officers or agents of the corporation, or whether it was sufficient to show a corporation *de facto*, and that the agents by whom the con-

tract of insurance was made were the agents *de facto* of the corporation.

It is true that counsel for the defendant seem to claim in their brief that the recital of facts, in their bills of exception, as proved and not proved, show that even the *de facto* existence of the corporation was not proved, nor the execution of the policy by any *de facto* officers or agents of such corporation. If this were so, there would be an end of the case, for the want of any evidence whatever upon the question of insurance. But we do not so read the bills of exception or the instructions of the Court. Belding testified that he was acting as the agent of the corporation, and effected the insurance and delivered the policy which was received by the defendant, and was still in his possession, or which is the same thing, in the possession of his attorney. Thus much appears from the recitals contained in the bills of exception. From those facts the jury might well find the *de facto* existence of the corporation, and the execution and delivery of the policy of insurance by its *de facto* agents.

*Evidence in trial for arson committed to defraud insurance company.*

The question then being such as we have already stated, we are satisfied that no error is shown in that branch of the record which is now under consideration. It was not necessary for the prosecution to prove that the Hartford Insurance Company was legally incorporated, or that the policy was valid, and that the defendant could maintain an action thereon for loss or damage. His guilt or innocence of the offense charged in this indictment cannot be made to depend upon any such questions.

In the case of the *United States* v. *Amedy*, 11 Wheaton, 392, the prisoner was indicted in the Circuit Court of Virginia, under the Act of Congress of the 26th of March, 1804, for destroying a vessel with intent to prejudice the underwriters, and after a verdict of guilty, his counsel moved for a new trial upon grounds similar to those urged here. A corporation called the Boston Insurance Company were the underwriters,

and it was claimed that the due incorporation of the company must be shown, and that the terms of the law under which the company was incorporated must be shown to have been complied with, and that the policy had been executed by the authority of the company in such a manner as to be legally binding, on them.   The Court instructed the jury "that it was not material whether the company was incorporated or not; and it was not material whether the policy were valid in law or not; that the prisoner's guilt did not depend upon the legal obligation of the policy, but upon the question whether he had wilfully and corruptly cast away the vessel, as charged in the indictment, with intent to injure the underwriters."   The Judges were divided in opinion upon the motion for a new trial, and the case was certified to the Supreme Court of the United States, where it was held, (Mr. Justice Story delivering the opinion of the Court,) that the instruction of the Court below was in accordance with the law of the case.   In the course of his opinion, Mr. Justice Story said : " This is not the case where a suit is brought by the corporation to enforce its rights, where, if the fact of its legal existence is put in controversy upon the issue, the corporation may be called upon to establish its existence.   The case of *Henriques and Van Moyses* v. *The Dutch West India Company*, cited in 2 Lord Raym. 1,535, as decided before Lord King, whatever may be its authority, was of that sort, and therefore carries with it an obvious distinction ; nor is this the case of a *quo warranto*, where the Government calls upon the company to establish its legal corporate powers and organization.   The case here is of a public prosecution for a crime, where the corporation is no party, and is merely collaterally introduced as being intended to be prejudiced by the commission of the crime.   Under such circumstances, we think, nothing more was necessary for the Government to prove than that the company was *de facto* organized and acting as an insurance company and corporation.   The very procurement of a policy by the prisoner to be executed by the company

was of itself *prima facie* evidence for such a purpose. In cases of the murder of officers, it is not necessary to prove that they are officers by producing their commissions. It is sufficient to show that they act *de facto* as such. In cases of piracy, it has been held sufficient to establish the proprietary title to the ship by evidence of actual possession of the party claiming to be owner. These are analogous cases, and furnish strong illustrations of the general principle."

*Variance between name as proved and as charged in indictment.*

II. It is next claimed that the Court erred in refusing to arrest the judgment upon the motion of the defendant.

The ground of the motion was a variance between the name of the insurance company, as given in the indictment, and as proved on the trial, the former being the Hartford Insurance Company, and the latter the Hartford Fire Insurance Company. It is sufficient to say that, under our practice, this is no ground for the arrest of a judgment. (Crim. Prac Act, Secs. 289, 442.) But independent of this the two hundred and forty-third section provides that, "When an offense involves the commission, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured shall not be deemed material."

*Affidavits of jurors to impeach their verdict.*

III. The Court did not err in denying a new trial. So far as the motion was supported by the affidavits of the jurors, it is sufficient to say that they were not admissible. (*Turner* v. *Tuolumne W. and M. Co.*, 25 Cal. 397 ; *Boyce* v. *California Stage Co.*, 25 Cal. 460.) So far as it rested upon the conduct of the Sheriff it is answered by the cases of *The People* v. *Boggs*, 20 Cal. 432, and *The People* v. *Symonds*, 22 Cal. 348. The point made against the judgment is answered by the case of *The People* v. *King*, 28 Cal. 265.

Judgment affirmed.

By the Court, SANDERSON, C. J., on rehearing.

The re-argument has failed to satisfy us that we misapprehended the true facts of the case on the first hearing. In view of the whole record, we are still of the opinion that there was sufficient evidence before the jury to warrant them in finding the *de facto* existence of the Hartford Fire Insurance Company and the execution and delivery of the policy of insurance by its *de facto* agents.

The point, not noticed in our former opinion, that there is a material difference between our statute defining the offense charged in the indictment and the statute of the United States under which the indictment in the case of the *United States v. Amedy*, 11 Wheaton, 392, was found, affecting the amount and character of evidence, is, in our judgment, without merit. The language of the latter statute in the respect named is: " That if any person shall, on the high seas, wilfully and corruptly cast away, burn, or otherwise destroy, any ship or vessel of which he is the owner in part or in whole, or in anywise direct or procure the same to be done, with intent to prejudice any person or persons that hath underwritten or shall underwrite any policy or policies of insurance thereon," etc.

The language of our statute is as follows: " Every person who shall wilfully burn or cause to be burned any building, ship, vessel, or other water craft, or any goods, wares; merchandise or other chattel, which shall be at the time insured against loss or damage by fire, with intent to injure or defraud such insurer," etc.

The fact of insurance must exist, in order to complete the offense, under both statutes, and no more so under the latter than under the former; and the same evidence which would amount to proof of that fact in the one case would produce the same result in the other. In short, the distinction attempted to be drawn between the two statutes, in the respect under consideration, has no foundation. This is so obvious, upon inspection, that we did not suppose that any

reliance was placed upon the point, and therefore passed it by without notice in our former opinion.

Judgment affirmed.