[Crim. No. 1554. Second Appellate District, Division Two.—March 9, 1928.]

THE PEOPLE, Respondent, v. BESSIE NELSON, Appellant.

C. E. Heidingsfelder for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

WORKS, P. J.—The three defendants were charged in a single information with the crime of burning insured property. Under direction of the trial judge, Pritchard and LeVerne were acquitted. Bessie Nelson was convicted and

appeals from the judgment and from an order of the trial court denying her motion for a new trial.

■ It is insisted that the evidence was insufficient to support the verdict against appellant. We usually deem it necessary, when such a point is made in any case, to state so much of the evidence as is necessary to meet it. In the present instance, however, the chain of circumstances shown by the record justified so plainly an inference by the jury that appellant was guilty—if, indeed, it did not positively require the inference—that we think it unnecessary to state any of the evidence upon the question.

At the hearing appellant moved for a separate trial, but the motion was denied and she and Pritchard and LeVerne were tried together. The motion was made upon the ground that evidence would be introduced against appellant's co-defendants which would be inadmissible as against her, and that the hearing of such evidence by the jury would necessarily be prejudicial to her interest. ■ The question whether defendants in a criminal case shall be separately tried rests in the discretion of the trial court, and the exercise of discretion against a defendant asking a severance is controllable on appeal only when the discretion is abused (*People* v. *Perry,* 195 Cal. 623 [234 Pac. 890]). In the case cited the supreme court said that "In almost every criminal trial in which two or more persons are jointly charged with the commission of an offense some fact, or facts, are developed against one of the defendants which cannot be regarded as evidence against the other," and remarked that it is not the rule "that the defendants are entitled to a separate trial for that reason alone."

■ The fire which, as shown by the evidence, occurred in the insured house of appellant and her husband was extinguished before it had completely consumed the building. One of the persons who aided in extinguishing the blaze was a captain in the fire department. He testified that he found several gas jets in the house to be open, that the gas meter which controlled the flow of gas into the building was locked by a "standard padlock" used by a certain gas corporation, but that the meter had been "turned on" as far as the presence of the padlock would permit and that he found it in that condition. He also testified that he found in the house a wrench the "mouth" of which was turned

or opened to a certain width, and, over the objection of appellant, that he applied the wrench, as thus open, to the valve which controlled the entry of gas into the house at the meter and found that it fitted exactly. It is contended that the trial court erred in permitting the witness to detail to the jury his experiment, conducted in the absence of appellant, in applying the wrench to the valve. We think the ruling was proper. ▮ A statement of physical facts by a witness in a criminal case is not rendered inadmissible merely because their existence was ascertained in the absence of the defendant on trial. The question here presented seems to be practically identical with that shown by a part of the facts recited in the latter half of the opinion in *People* v. *Searcey*, 121 Cal. 1 [41 L. R. A. 157, 53 Pac. 359].

▮ Certain alleged confessions of Pritchard and LeVerne being about to be offered, the trial court was proceeding to embark upon an investigation of the question whether the confessions were freely and voluntarily made, whereupon appellant, contending that this preliminary evidence would be damaging to her, asked for an exclusion of the jury and the request was denied. The ruling was proper, as it was necessary for the jury to hear the preliminary evidence. "The judge must determine, first and as a matter of course, whether the confession was free and voluntary and whether, therefore, it is to be heard by the jury. . . . The judge may decide that the confession was freely and voluntarily made and, if he does, will allow it to be received in evidence; but the jury may, upon the same evidence, determine that it was not so made and may refuse to consider it" (*People* v. *Black*, 73 Cal. App. 13 [238 Pac. 374]).

▮ The deposition of one Kennedy, taken at the preliminary examination of appellant was read in evidence at the trial and appellant contends that there was no preliminary showing by the prosecution of due diligence in an attempt to procure the personal attendance of the witness. According to the minutes of the trial court, of date March 28, 1927, the cause was set down for trial on June 1st. In the meantime the district attorney procured the issuance of a subpoena for a number of witnesses, including Kennedy, but the process was never served on him. However, when the cause was called on June 1st he was in attendance in court.

The trial was not then commenced, a continuance to June 17th being ordered and all witnesses being instructed to return at that time. The record fails to disclose whether Kennedy was present in court on June 17th, but on that date a further continuance was ordered to August 17th and all witnesses were instructed to return on the date set. In the interim, and on or about July 1st, Kennedy letf the county of the jurisdiction and went to Canada, where he remained until after the time when his deposition was read to the jury. Both his intention to depart and his actual departure were unknown to the district attorney. While it would have been better if the prosecutor had caused the subpoena to be served on Kennedy, we think, under all the circumstances of the case, that the failure to serve it does not show a lack of due diligence. Kennedy was in the employ of the public as an ''arson investigator'' under the county fire warden. It was evidently a part of his duty, or aided in the discharge of his duty, to give testimony to facts ascertained by him as an investigator. He had testified at the preliminary . examination of the charges against the defendants and was present in court on the day first set for the trial in the superior court. We think the district attorney was justified in the belief that he would be present, as he was instructed by the court to be, whenever his testimony was needed. Under all these circumstances the prosecution is not to be held responsible for his nonappearance at the final time, and for his departure from the jurisdiction without warning. We think there was a showing of due diligence as required by section 686 of the Penal Code. It is especially to be noted that the record shows without dispute that Kennedy was out of the state—out of the country, in fact—at the time of the trial, a circumstance which has been allowed controlling weight in several late cases, notably in *People* v. *Padilla,* 81 Cal. App. 528 [254 Pac. 585].

■ The alleged confessions of Pritchard and LeVerne were never received in evidence, but were marked as exhibits for identification only. When the jury retired to consider the charge against appellant these exhibits for identification, apparently through inadvertence, were handed to a member of the jury together with other papers and were then taken into the jury-room. Members of the jury within a few minutes discovered that the alleged confessions

were among the papers which had been taken into the room, whereupon the bailiff of the court was immediately called and was made acquainted with the fact. That officer then reported the circumstance to the judge who had tried the case, with the result that the exhibits for identification were at once removed from the possession of the jury. Appellant, deeming that the alleged confessions contained matters which were highly prejudicial to her interest, sought, on her motion for a new trial, to take advantage of the circumstance that the papers had been in the possession of the jury during its retirement to consider a verdict. On the hearing of the motion eleven of the jurors were sworn and examined, and we have read the transcript of their testimony thus given. We find it unnecessary to set down in detail what the testimony was. It is enough to say that each of the eleven testified that he read or heard read no part of the confessions, except that it was testified by a few of them that one of their number read aloud, in the hearing of two or three of the others, a few lines at the beginning of one of the papers. The confessions were in the form of question and answer, and the portions of the one which was read aloud consisted only of questions and answers relating to the occupation and address of the person whose alleged confession followed. The reading was merely for the purpose of identifying the paper. It is necessary briefly to refer to the twelfth juror, the one whose testimony was not taken on the hearing of the motion for a new trial. It was testified by several of the others that this juror neither saw the confessions nor read them nor heard them read. While, of course, these papers should never have gotten into the jury-room, the only question of substance presented for our consideration is whether appellant was injured by the inadvertence. Remarks to this effect are to be found in the opinion in *People* v. *Stokes,* 103 Cal. 193 [42 Am. St. Rep. 102, 37 Pac. 207], although there it was held that what occurred in the jury-room was damaging to the appellant and a reversal of the judgment followed. We are satisfied that the rights of the appellant in the present instance were not prejudiced by the untoward circumstance shown by the record.

An officer of the fire department was asked whether, on a certain date he was at the house of appellant and her

husband "in response to a previous fire." The trial court overruled the objection to the question and the witness answered: "I was—I do not know as to the date, but I was there at a previous fire." The attorney-general would defend the ruling on the ground that the evidence "was competent as tending to show intent, design and plan," but it did not tend even remotely to show either intent, design or plan. There was nothing to show how the earlier fire was started or whether appellant even knew that it had occurred. The circumstance here disclosed is utterly different from those presented by *People* v. *Shainwold*, 51 Cal. 468 and *People* v. *Lattimore*, 86 Cal. 403 [24 Pac. 1091]. The testimony was not admissible under the rules of the criminal law which permit evidence of other and similar offenses under certain circumstances, for the reason that no offense whatever was shown. The ruling was error.

■ Appellant complains of rulings of the trial court which excluded two letters written by a witness for the prosecution—letters offered for the purpose of showing the hostility of the witness toward her. The letters were not offered while the witness was on the stand, nor were they exhibited to him. He was asked, however, if he had written letters containing certain matters, among which were statements that if appellant "stuck" Pritchard and LeVerne the witness "would send her to the penitentiary" and that the witness would "stick" appellant and "would send her to the pen as sure as hell," and he said that he had not. It transpired later, when the letters were offered, that they contained no such assertions, nor anything remotely resembling them. It has been well said that when the credibility of a witness is assailed on the ground that he has made declarations showing hostility toward the party against whom he is called, "it is required that the attention of the witness be called to the particular acts or declarations proposed to be proved, with sufficient minuteness as to time and circumstance as to afford him an opportunity to explain" (27 Cal. Jur. 129, sec. 105). Appellant did not comply with this rule and the letters were properly excluded.

■ Appellant contends that the trial court erred in admitting certain testimony of the insurance agent who delivered to her the fire insurance policy upon her property. The testimony was to the effect that the insurance company

which purported to issue the policy was an existent insurance corporation at the time the policy was issued and that the company was licensed to do business in California. The testimony was proper under the rules laid down in *People* v. *Hughes*, 29 Cal. 258, and *People* v. *Morley*, 8 Cal. App. 372 [97 Pac. 84]. The question involved here is one mainly of intent. It was said in the opinion in the first of the two cases cited, where the charge was the same as the one here under consideration: "It was not necessary for the prosecution to prove that the Hartford Insurance Company was legally incorporated, or that the policy was valid, and that the defendant could maintain an action thereon for loss or damage. His guilt or innocence of the offense charged in this indictment cannot be made to depend upon any such questions." The evidence admitted in the second case cited, and which was there held to be sufficient, was practically the same as that admitted here.

Appellant states a number of other points, but they are either not argued, or they are disposed of by what we have said above as to other points, or they are plainly without merit. They do not therefore require a particular consideration.

Because of the single error which we have found in the record we have found it necessary to examine the entire cause, including the evidence, as required by the constitution. From such examination we are convinced that the error has not resulted in a miscarriage of justice.

Judgment and order affirmed.

Craig, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 7, 1928.