[Crim. No. 688.    Second Appellate District, Division One.—January 26, 1920.]

THE PEOPLE, Respondent, v. LEWIS B. HARRIS, Appellant.

[1] CRIMINAL LAW — APPLICATION FOR CONTINUANCE — DISCRETION OF TRIAL COURT—APPEAL.—An application for a continuance of the time of trial in a criminal action is one which addresses itself to the sound discretion of the trial court; and without an abuse of discretion being made to appear to the appellate court, that court cannot interfere with the action taken.

[2] ID.—RIGHT TO TRIAL BY SPECIFIC JURORS — EXCUSAL OF JURORS WITHOUT CHALLENGE—ABSENCE OF PREJUDICE.—A defendant in a criminal action has no vested right to have certain specific jurors sit in the trial of his case; and where it appears without question that he was tried by twelve competent, fair and qualified jurors, he not having exhausted all of his peremptory challenges, he is in no position to complain of the action of the trial court, at the beginning of the trial and before any of the names in the jury-box of jurors regularly in attendance had been drawn, in excusing two cer-tain jurors from further attendance as jurors.

[3] ID.—PROSECUTION FOR BURGLARY AND GRAND LARCENY—INCRIMI-NATING ADMISSIONS OF DEFENDANT — EVIDENCE.—In a prosecution for burglary and grand larceny, testimony as to a conversation had

with the defendant· in the county jail, wherein he made incriminating admissions, is properly admitted, the witness having testified in positive terms that he held out no hope of reward and said nothing from which the defendant could have drawn such an inference.

[4] ID.—ESCAPE AND FLIGHT—ATTACK ON OFFICER—EVIDENCE.—In a prosecution for burglary and grand larceny, evidence of defendant's escape and flight from the jail after his arrest, and the fact that when apprehended a few hours thereafter he, in resisting the officer, tried to cut the latter's throat with a razor, was admissible as tending to show consciousness of guilt.

[5] ID.—BURGLAR TOOLS TAKEN FROM COMPANION—ADMISSIBILITY IN EVIDENCE.—In such prosecution for burglary and grand larceny, the court did not err in admitting in evidence a bag of burglar's tools which, while not in defendant's actual possession, was in the apartment of a woman with whom he was unlawfully living and to whom he, by telephone, communicated an order directing her to take the same and deposit in a parcel-room, which she did, receiving a check therefor, which was found under the carpet of the apartment by the officers, who thus obtained possession of the bag.

[6] ID.—DUTY OF COURT TO PRESERVE ORDER—RIGHT TO GAG OBSTREPEROUS PARTY.—It is the duty of a trial judge in the administration of justice to preserve the order of the court and see to it that all persons whomsoever, including the defendant himself, indulge in no act or conduct calculated to obstruct the administration of justice; and if necessary to the orderly proceedings of a court, the trial judge would be justified in causing an obstreperous defendant to be gagged where the trial could not proceed without such action.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Guy Eddie for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and Thomas A. Wood for Respondent.

SHAW, J.—Upon an indictment charging him therewith, defendant was convicted of the crimes of burglary and grand larceny.

He appeals from the judgment which followed and from an order of court denying his motion for a new trial.

The accusation is based upon the alleged act of defendant in feloniously entering the banking-room of the First

National Bank of Artesia and unlawfully taking therefrom certain moneys, bonds, and other personal property belonging to the bank.

[1] At his arraignment, on May 19, 1919, defendant entered a plea of not guilty and, with his consent, his trial was set for July 9th following. On July 3d defendant, in person and without the presence of counsel, appeared in court and at his request the time of trial was continued to July 22d. On July 19th he, with new and different counsel, appeared in court and, upon the ground that such counsel required more time to prepare for the trial, moved for a further continuance, which motion was granted, and the time of trial fixed for July 25th. The contention of appellant seems to be that, although he did not ask it, the court should have postponed the trial to a later date than the 25th of July. The application for the continuance was one which addressed itself to the sound discretion of the court and, in the absence of counsel requesting a further continuance than that granted, we must assume, for aught that appears to the contrary and in the absence of any objection made to the extent of the postponement, that the order made was in accordance with defendant's request. At all events, it cannot be said the court abused its discretion in fixing the time of trial for July 25th, and without such abuse being made to appear this court cannot interfere with the action taken. (*People* v. *Ponchette,* 30 Cal. App. 400, [158 Pac. 338]; *People v. Goldenson,* 76 Cal. 341, [19 Pac. 161].)

The indictment alleged the offense was committed on or about March 29, 1919. In his opening statement the district attorney stated that the evidence would show that the crime was committed on March 25, 1919. Thereupon counsel for defendant moved for a continuance upon the ground that he did not have witnesses present to prove where the defendant was on March 25th. This motion was denied without prejudice to counsel's renewal of the motion if it were found necessary for him to secure such witnesses; in response to which counsel expressed himself as satisfied with the ruling. The fact that such application was not made, although the trial continued for a period of two weeks, is indicative of the fact that no reason existed for renewing the motion.

[2] It appears that at the beginning of the trial and "before any of the names in the jury-box of jurors regularly in attendance in Department 18 had been drawn, and while the roll of the trial panel whose names were in the jury-box was being called by the clerk, on reaching the names of Ida M. Bruns and W. E. Grosh, the court excused said two jurors from further attendance as jurors." Thereupon counsel for appellant interposed a challenge to the entire panel, based upon the action of the court in excusing the said jurors of its own motion, which challenge, since no ground existed therefor under the provisions of section 1059 of the Penal Code, was properly denied. Nevertheless, appellant insists, that his substantial rights were, in some indefinite way, prejudiced by virtue of the action of the court, and assigns the same as ground for reversal. We perceive no merit in the contention. Defendant was entitled to be tried by a lawful jury, and since, as shown, he did not exhaust all of his peremptory challenges, we must assume that in this respect he was accorded every right to which he was entitled. If a juror not possessing the requisite qualifications is allowed to sit against the objections of a defendant, it constitutes ground for reversal, but he is in no position to complain, either because the court erroneously rejects a juror challenged for cause or, acting on its own motion, excuses a juror without just cause. In *People v. Arceo*, 32 Cal. 40, it is said: "Thus, it appears, in many instances, parties not positively disqualified under the law, yet, in fact, not qualified or fitted to discharge the duties of jurors in the given case, and in some cases where there was really no sort of objection, courts have discharged them in the exercise of their discretion, and their action has been affirmed on appeal." In discussing a like point, where the court of its own motion discharged an entire panel of twelve jurors, the court, in *People* v. *Murray*, 85 Cal. 350, [24 Pac. 666], said: "The court had the undoubted right to discharge them, or any of them, at any time, without giving any reason for such discharge, and without the existence of any reason. The only difficulty apparent in this case is, that the jurors were discharged for what might under some circumstances be an insufficient reason. But as no reason was necessary, the fact that an insufficient one was assigned as the ground of the order can make no difference."

To the same effect is *People* v. *Searcey,* 121 Cal. 3, [41
L. R. A. 157, 53 Pac. 359]. Since defendant had no vested
right to have the excused jurors sit in the trial of his case
(*Asevado* v. *Orr,* 100 Cal. 300, [34 Pac. 777]), and it
appearing without question, that defendant was tried by
twelve competent, fair, and qualified jurors, he is in no
position to complain that the court, acting within its discre-
tion, rejected the two jurors. Conceding no cause existed
for such action, the effect thereof is precisely the same as
though the court had granted a challenge for insufficient
cause.

While appellant claims the evidence is insufficient to
justify the verdict, his counsel directs our attention to facts
and circumstances, clearly established by the testimony of
witnesses for the state, from which it would seem impossible
for impartial and rational-minded men to arrive at any
conclusion other than that expressed by the jury in the
verdict rendered; indeed, instead of the evidence being
weak and unsatisfactory, as suggested by appellant, it would,
in our opinion, be difficult to conceive of a stronger chain
of incriminating circumstances than that presented by the
evidence.

Many of the court's rulings in admitting and rejecting
testimony are assigned as error. As to some of these, even
though the alleged errors in the ruling were conceded, no
possible prejudice could, in view of the conclusive character
of the evidence, have resulted from the rulings.

[3] One of appellant's chief complaints is that the court
erred in permitting the witness Frampton to testify to a
conversation had with defendant in the county jail, wherein
the latter made incriminating admissions. It is claimed
that such admissions were made under a promise of reward.
There is no merit in this contention, for the reason that
the witness testified in positive terms that he held out no
hope of reward and said nothing from which defendant
could have drawn such an inference. On the contrary,
the statements are shown to have been made freely and
voluntarily by defendant, prompted, perhaps, by the hope
that his proposed return of part of the stolen property
would, under a plea of guilty, obtain for him favorable
consideration in the punishment to be imposed. For the
same reason, the court did not err in admitting like testi-

mony of witness Hatton. [4] Evidence of defendant's
escape and flight from the jail after his arrest, and the
fact that when apprehended a few hours thereafter he, in
resisting the officer, tried to cut the latter's throat with a
razor, was clearly proper as tending to show consciousness
of guilt. [5] *People* v. *Flannelly,* 128 Cal. 87, [60 Pac.
670]; *People* v. *Crowley,* 13 Cal. App. 325, [109 Pac. 493].)
Neither did the court err in admitting in evidence the bag
of burglar's tools which, while not in defendant's actual
possession, was in the apartment of a woman with whom
he was unlawfully living and to whom he, by telephone,
communicated an order directing her to take the same and
deposit it in a parcel-room, which she did, receiving a
check therefor, which was found under the carpet of the
apartment by the officers, who thus obtained possession of
the bag. (*People* v. *Winters,* 29 Cal. 658.)

[6] During the course of the trial the defendant, by his
obstreperous conduct and abusive language, constantly in-
terfered with the orderly proceeding thereof, and, not-
withstanding the repeated orders of the court admonishing
him to keep quiet and cease interrupting the witnesses, he
continued his interruptions and abuse, in one instance
calling the witness on the stand "a God damned liar," and
upon the court saying to him, "We will suspend the trial
until you keep still," he replied: "I don't care if you sus-
pend it until doomsday." During another outbreak of de-
fendant, the court ordered the bailiff to see that he was
seated and, defendant continuing his interruptions, the court
said: "Put a gag on him. Gentlemen, we are going to
have order." Whereupon defendant's counsel asked that
the jury be excused, to which the court replied: "I will
not excuse the jury when the defendant brings upon him-
self a scene like this." The conduct of the defendant and
the scenes enacted by him were such that the court was
forced to order a recess for fifteen minutes. Although the
order of the court to put a gag on defendant was not
carried out, appellant assigns the language of the court as
prejudicial misconduct. It was the right of the defendant
to be present at his trial and this right, notwithstanding
his obstreperous conduct, was accorded him. It is the
duty of a judge in the administration of justice to preserve
the order of the court and see to it that all persons whom-

soever, including the defendant himself, indulge in no act or conduct calculated to obstruct the administration of justice. In the case of *State* v. *Allen,* 45 W. Va. 65, [30 S. E. 211], where the court had under consideration the question of the power of the trial court to restrain the violence of a defendant on trial by shackling him, it was said, in justifying the action, that it was a matter for the discretion of the trial court, in the exercise of which, however, the court should not resort to such extreme measure unless rendered necessary to curb the prisoner's violent and obstreperous conduct or to prevent his threatened escape. While in this case the threat of the court to have the prisoner gagged was not carried out, nevertheless, if necessary to the orderly proceedings of a court, the trial judge would be justified in adopting such means as a last resort to control an obstreperous defendant, by reason of whose conduct the trial could not proceed without such action.

There are other alleged errors, including the action of the district attorney in discussing the evidence, none of which, however, other than· those discussed, requires any consideration. In most cases they are puerile and absolutely without merit; indeed, the record taken as a whole is, in our opinion, free from any prejudicial error and the character of the evidence such as to leave no doubt whatsoever as to the defendant's guilt.

The judgment and order are affirmed.

Conrey, P. J., and James, J., concurred.